is Taylor v. Polhill. Mr. On a stage of Bowdoin for appellant Robert Taylor. Every court to have considered the question and the FDA itself agrees that state laws requiring hearing exams prior to the sale of a hearing aid are preempted by the federal medical device amendments. Mr. Taylor has standing to make the same claim because on its face Florida's law requiring mandatory exams applies to anyone regardless of whether they are licensed or not. The statute clearly says that failing to comply with any provision of the chapter subjects somebody to discipline. The state relies on a discretionary regulation which allows the board to issue a citation in lieu of other disciplinary procedures and it then says that citations may only be given to licensees but we know that's not true because the board itself issued Mr. Taylor a citation after he had given up his license. So it's clear that non-licensees can be issued citations and Mr. Taylor is subject to a penalty for not providing an exam if he chooses to do so in the future. Even if the court does not think that he can be fined right now for failing to provide an exam we think he still has standing for two reasons. One is that we do not believe that the licensure provision is severable from that pre-sale exam requirement. The licensure law is entirely wrapped up with that pre-sale exam requirement. It contains myriad other provisions which essentially revolve around and incorporate that same requirement. When somebody's licensed do they have to certify that they know what a licensed person that deals in hearing aids will have to do and that they'll comply with that? Is there any statement like that in the application for a license? I'm not sure if that's directly in the license but certainly the the laws themselves require licensees to abide by all regulations. But on this record there's nothing on this record to substantiate your point that when you get the license you somehow agree to be bound by all these terms and conditions. Well if you're asking if that draws into question whether he's subject to the exam requirement once he becomes licensed, I don't think the state disputes that. It says that the mandatory exam requirement is mandatory. So you're just saying that they're tied together and I'm just trying to see how closely they were tied together. I see. I think they're tied together because for example in other parts of the statute there are requirements to make certain disclosures at the time of the exam. There is a medical clearance requirement that's other where in the statute, other place that requires dispensers when they are performing an exam to make if they see any sort of red flag to to stop the exam and say that the person needs to go see a doctor. So there are a lot of other provisions of the statute which assume that an exam is being given. So it's not as if the court can simply excise the exam requirement and leave in place a comprehensible statute that we can be sure the  I think the statute starts to fall apart because so many of the other provisions revolve around that exam requirement, the continuing education requirements, the training requirements. Help me understand the Florida statute 456.065, unlicensed practice of a health care profession. Two says the penalties for the unlicensed practice shall include when the department has probable cause to believe that any person not licensed by the department has violated any provision of this chapter or any statute or any rule, the department may issue a cease and desist notice of such a violation and B, the department may impose an administrative penalty not to exceed $5,000 per incident. Is it your view that that statute covers your client for the unlicensed practice? Not only that, but there are specific regulations that the Board itself has promulgated. So those, the Board itself has cited some of those. Right. But I just wanted to start with the statute itself. That's right. I think the statute imposes a requirement and certain penalties on anybody who either sells or sells without providing an exam. Sometimes judges ask a favorable question rather than one that you would have to dispute. I thought there was pretty reasonable inference that if we hold the way you would like us to hold, that Mr. Taylor, and if it was required that he be licensed, he would become licensed and therefore he would have standing. Am I wrong? That's absolutely right. And I think that's a fair inference from the complaint because the complaint states that the only reason he gave up that license was because of the pre-sale exam requirement. And he obviously wants to continue dispensing hearing aids. Absolutely. That is his only way of earning a living. I would suggest if my brothers agree that we get on to the merits. Excellent. Moving on to the merits, as I said, every court to have considered the question agrees that these pre-sale exams are preempted. The FDA itself has said that. It's clear that these requirements are in addition to what's required by Federal law. The only argument the government makes contrary to that is that there's no specific analogous provision in the medical device amendments relating to And that is the law, is it not? I mean, the Supreme Court in Lohr applied that very regulation and principle, did they not? Pardon me? The Lohr, L-O-H-R case. Right. So in Lohr, the Supreme Court says that there's an express preemption statement and an implied preemption doctrine, and the court can apply implied preemption in addition to any sort of express preemption statement. So I don't think that implied preemption now overrules the express preemption statement that the Supreme Court has affirmed in other cases. But did not the Supreme Court in Lohr require that in order for there to be preemption, a Federal regulation had to deal specifically with the subject that the State regulation was dealing with? Your Honor, I think it depends on what you make of the term specific. I don't think the court holds that specific has to be as specific as the government would like. The government would like specific to mean essentially analogous, but we know that can't be true. Well, in this case, the Federal regulation requires an examination by a doctor, and the of a hearing aid has to be accompanied by this, I call it, audio exam instead of the long term. Those seem to me to be very, very different. Well, to clarify Lohr and Riegel, they both say they contrast specific with general. And they say general means a requirement in the medical device amendments that applies to all medical devices. And specific is only taken down to the level of the particular device. And so long as there is a requirement applicable to a particular device, that is specific enough to preempt all other State laws that are in addition to anything listed there and that have to do with safety and effectiveness. So I don't think there has to be something analogous. And we know that's true because the State does not argue that audiological exams are not preempted. It admits that audiological exams are preempted, and there's no equivalent in the medical device amendments having to do with audiological exams. It simply distinguishes between audiological exams, which are performed by a licensed audiologist, and audiometric exams, which are at issue here. But the FDA has said that audiological exams are preempted. There's no specific, you know, analogous part of the medical device amendments with that in it. So I don't think that there has to be a specific analogous regulation in the medical device amendments. Help me with 484053, one of the three provisions at issue. Requires a license before selling a hearing aid. Your client didn't have one. The district court said that it was not preempted because of the exception or exemption in the statute and because of the specific codification found in CFR 808.1d3, where the FDA specifically doesn't preempt State licensing requirements. Why isn't that the end of it? Why isn't he right on that and he's loose on that? For the reason just as simple as that. You know, we do not dispute that the State could enact a licensing requirement, but that licensing requirement cannot embed within it preempted provisions. The State cannot bootstrap its way out of preemption by simply, you know, including Well, your argument is on its face, the district court's right, but he's really wrong because you have to tie together two of the provisions, not just one. That's right. Because and essentially that But isn't it utterly severable? Can't we separate out the licensing requirement on its own terms and say, one, the CFR doesn't preempt the State licensing requirements expressly and explicitly. The State of Florida, in this case, had a licensing requirement. And that's different from the other provisions, distinct from, severable from, let's say, 484.0501, the presale requirement, including fitting and selling. They're sort of separate. One says you've got to have a license and the other does not. We think this was all decided on motion to dismiss, and we think that we have plausibly alleged that that they are not severable. And that's because, as I said, there are so many other provisions within the statute, including the definition of being a hearing aid dispenser itself that includes providing this exam. I don't think it can just be clearly excised out under Florida's severability doctrine. So we think we've at least plausibly alleged that they're not severable. But Help me with the other one. 484.054, the flat mail order ban in Florida. Did the Food and Drug Administration promulgate a specific regulation dealing with and allowing a state to impose a mail order ban? No, Your Honor. But again, we don't think that that's necessary because FDA has said the government does not dispute that, for example, audiological exams are preempted and there is no counter, no analogous. I guess what I'm getting to with my question is I think that the CFR 21808.1D in general might provide an answer, except I don't know that the FDA has the regulatory authority to add sort of this blanket exemption from the preemption provisions when the statute itself reads in a different way. It says here's a law, I'm talking about 21 section 360K, the statute itself. It says general rule except as provided in B, no state or political subdivision may establish or continue in effect with respect to a device for human use, which is different from or in addition to any requirement applicable under this chapter in which relates to safety. B, the exemption requirements say upon application of a state or a political subdivision, the secretary may by regulation promulgated after notice and hearing exempt from Section A under such conditions as may be prescribed a requirement, blah, blah, blah, if the requirement is more stringent than et cetera. But it seems to me what the secretary has done, and maybe I've misunderstood this, is issue sort of a blanket exception without codifying specifically. They certainly do with respect to licensing, but did they do that with respect to everything else? And if the answer is no, did they act beyond their power in promulgating 808.1D? Do you follow the thrust of my question? I do. I'm just concerned that they didn't just promulgate specific exceptions or exemptions. They then promulgated a general exception or exemption. And I don't know that that's what Congress said specifically when it used the words it did in 360K. Well, I think if anything, that that weighs in our favor because it means that FDA has exempted a bunch of things that it shouldn't have and that the express preemption statement in the statute is actually broader than the take FDA has taken by promulgating this blanket exemption for certain things. Oh, yes. The net result of what I'm asking about is it's an argument you didn't make, but if it's right, you would win anyway on 484.054. I agree. I think that's right. I want to ask you about the 2017 law. That could affect the mail order portion of this case, could it not? The 2017 regulations? Right. Right. So, I don't, the 2017 regulations. The regulations I'm thinking about, right. And the regulations under the 2017 law. The 2017 FDA. Yeah, yeah. Pardon? Yes. I think those regulations tend to show, and they bolster our case, because they show that FDA considers Class I devices, including hearing aids, to be minimally a danger to public health. They're trying to loosen up restrictions on hearing aids in order to make them better accessible, in order to acknowledge new technology. And they realize that they don't. They just, the biggest threat to public health is not getting a physical exam by a doctor, and they don't even require that. So, I think it just supports the, our interpretation. That will, the regulations are not effective yet, is that correct? For over-the-counter regulations are not effective yet. But they deal only with mail order. Is that not true? No, I don't think so, Your Honor. I think the over-the-counter regulations will apply to all sales of hearing aids. In any event, that is a matter that would have to go back to the district court, because we, in effect, know nothing. Y'all haven't told us anything about that. That's right. Does this case involve a challenge to the constitutionality of 21 CFR 808-1? Has anybody put that issue into effect, into play here? No, Your Honor. In fact, we rely on it, and we're not challenging it. But nobody's challenging the constitutionality, that is, whether that reg is a proper use of administrative authority given by Congress. That's right. Nobody has challenged that. All right. Thank you. I'll reserve the rest of my time. I'm going to ask you to pronounce your name for me, if you don't mind. Yes, Your Honor. It's Kevin Golombieski. All right. For the Florida Board of Hearing Aid Specialists. May it please the Court. So I'd like to first start on the merits, and specifically with Smith v. Pingree, the old fifths case that we cite extensively in our brief. Well, can I just ask you, as a prefatory matter, why isn't there standing? Let's cut to that issue right away. Yes, Your Honor. So under- Under 484.056 of the Florida statutes, and under force 56.065 of the Florida statutes, can he be cited and fined $5,000 for acting without a license? And if the answer is yes, then it seems to me his injury would be direct and immediate, and he would most assuredly have standing. What's wrong with what I'm saying? So that's correct for the licensing requirement, Your Honor. It's the state's position that Mr. Taylor has standing to challenge the licensing requirement. However, as a district court held, he lacks standing to directly challenge the pre-sale fitting requirement. So the state, under the provision you cited, 456.065, can enforce against an individual for the unlicensed sale of hearing aids. But the state cannot enforce against unlicensed individuals failure to comply with the pre-sale fitting requirement. So Mr. Taylor, if he started selling hearing aids today, he could not be penalized for violating the pre-sale fitting requirement, only the licensing requirement. And so in pre-enforcement cases, Your Honor- Under Florida law, he could not be penalized? Yes, Your Honor. But much of Florida, much of that Florida law does not limit itself to licensees. I mean, if you look at 4840501, the only thing, paragraph 6 says, audiometric test performed by a licensee, but the others simply say, these are things that need to be done, and they aren't limited to licensees at all. And then it goes on to say that duly authorized officers can expand that. So, I mean, I don't see that it's true that he could not be penalized for anything other than the failure to get a license if he tries to sell today. I have two responses to that, Your Honor. So first, the pre-sale fitting requirement, all those subsections refer to only licensees and hearing aid specialists. So, for example, in subsection 5B, Your Honor, and let me pull this up. So in 5B, it says at the time of the initial examination for the fitting and sale of a hearing aid, the attending hearing aid specialist must notify. And then in subsection 6, it also states that each audiometric test conducted by a licensee or trainee. And so throughout the provision. Yeah, but 6 says licensee. I said that, that 6 does limit it to licensees, but 5 doesn't. 5 just says that a hearing aid officer, it doesn't say a licensed one, shall do certain things. And 1 and 2 and 3 and 4 require the way that you do fittings and the way that you do testing. None of that is said, none of that is limited to licensees. And then at the very, on 7, there's a broad statement that the board can adapt and adopt and enforce rules. And those have been expanded. So I just don't think it's a correct reading that everything is conditioned upon being a licensee. I'd also point the Court, Your Honor, to the enforcement provisions within Chapter 484. So there's the provision that sets forth the requirement that you need to have a license. That's 484.053. And that says any person that engages in the unlicensed sale can be penalized. That provision, however, does not mention penalties for the fitting requirement. In contrast, the provision stating the disciplinary action that can be taken against licensees does mention the fitting. Of course, the problem that I see with that is 484.056.1 says the following acts constitute grounds for denial of a license or disciplinary action, W, violating any provision of this chapter. That's correct. And, Your Honor, disciplinary action refers to the board taking action against the licensee, either revoking the license or requiring them to engage in continuing education. So it's the State's position that only the board can enforce that fitting requirement and the board's jurisdiction is limited to licensees, Your Honor. I didn't mean to take you too far off the merits, and I think it would help me if you'd go right to the merits. Yes, Your Honor. So in Smith v. Pingree, the old Fifth considered a challenge to one of Florida's pre-sale fitting requirements, the room requirement that the fittings take place in a particular type of room. And in reaching that conclusion, the Court held that 801.421 does not address fitting, and so therefore it's not a Federal counterpart for Florida's fitting regulations. And that is on-point precedent that Mr. Taylor has not made a showing that we need to set aside the prior panel precedent rule and ignore. His attack on Pingree fails for two reasons. So his attack is that it engaged in implied preemption analysis, which was improper, and it's been abrogated over time. But first, under the prior panel precedent rule, even if a decision of this Court is at odds with the reasoning of a later Supreme Court opinion, this Court has held that that's not sufficient. The prior panel decision stands. So his argument on its face is not sufficient to set aside this Court's decision. But getting to the substance of the argument, in express preemption cases, the analysis to determine the scope of preemption is dictated by the statute. So, and in this case, Section 360K requires an analysis that courts look at Federal counterparts or specific Federal requirements to see if the State regulation is different than or in addition to. That looks in some ways like conflict or field preemption analysis. You've got to look to see if there's a Federal regulation addressing the same subject matter. And so if Pingree leaned on implied preemption principles, that doesn't necessarily make it inconsistent with the statute. The statute dictates an analysis that looks at the Federal regulations. And so this gets to a basic — It goes more than just saying different or additional to. It also says, and it has to relate to safety and effectiveness. That's correct, Your Honor. But it's the State's position that the different or addition to language is dispositive, and Pingree got it right. And during my opponent's argument, the Court mentioned Lohr v. Medtronic. And Lohr is fully consistent on this point with Pingree in requiring an analysis of a Federal counterpart. On page 500 of Lohr, Justice Stevens states that you need to do a careful comparison of a Federal regulation and the State requirement under the MDA to assess whether, indeed, the Federal requirement is a Federal counterpart. And this also underscores — and I know Judge Marcus had concerns about provision 808.1d, but the Court doesn't even need to rely on 808.1d. Pingree is on point, and Lohr affirms Pingree's approach of looking for subject matter congruence and requiring a Federal counterpart to preempt a State requirement. And that reading, even looking beyond Pingree, is fully consistent with this Court's approach and broader jurisprudence related to preemption. This Court has recognized that there's a strong presumption against preemption. And that applies even when the Court is interpreting the scope of an express preemption provision. And so the Court needs to narrowly interpret the scope in order to make sure State sovereignty is respected. Do you agree with the statement made by the appellant's lawyer that the constitutionality and the enforceability of the regulations, the CFR regs, are not at issue here? Correct, Your Honor. They have not been challenged. And so setting aside the regs would not be possible because they have not been challenged as a State. And so opposing counsel — So is it your view going to that issue, and I agree it wasn't raised, that CFR 21 — 21 CFR 808.1d, there's a general exemption, you can do it that way and anything would go? You don't have to specifically codify? So I think — I mean, it's one thing. License is easy for me because you got a specific provision there. But can they throw up a blanket rule this way for everything else? I don't — The one answer to me is that's an interesting question. It's academic. They never raised it, never briefed it, never argued it, and it was never ruled on. And that's absolutely correct. But I'm just curious because it strikes me that they got a general rule here that swallows up the statute. I agree that it's not an issue here. But, Your Honor, I don't see it as a general rule that swallows up the statute. The statute requires that in order to trigger preemption, there needs to be a requirement that's different than or in addition to a federal requirement. And so the statute, the regulation is interpreting that and saying that means there needs to be a federal counterpart that the State is different than or in addition to. So it goes back to this idea of subject matter congruence. And so in Lohr, for example, and in Regal v. Medtronic, the Court was looking at whether specific federal requirements addressing design, labeling, and manufacturing preempted State tort claims addressing design, labeling, and manufacturing. Those have subject matter congruence. And so the Supreme Court said, yeah, there is preemption here. At least in Regal, they did so. And so I think that the regulation is fully consistent with how the Court has interpreted the text of Section 360K. And so it's not giving just carte blanche to the FDA. And I wouldn't see it as a general preemption regulation, Your Honor. The Supreme Court in Lohr very clearly applied this same regulation that we are considering. Was the authority of the agency to promulgate that regulation challenged in Lohr? The weight of the regulation was contested in Lohr, I believe, Your Honor. I'd have to double check that. But the opinion did discuss the regulation and afforded it significant weight. Notably, though, in the later decision in Regal v. Medtronic as well, the Court said, we don't even need to rely on the regulation because there is the need for a specific federal counterpart. Court retreated from the regulation a bit in Regal. But nonetheless, this Court does not need to rely on the regulation because Smith v. Pingree is on point. And there's nothing that's abrogated it since. And to further illustrate that Smith v. Pingree is on point, if this Court were to hold otherwise now and find that Mr. Taylor has stated that a meritorious claim for preemption of the pre-sale fitting requirement, this Court would have to nullify that fitting requirement, which would nullify the fitting room requirement as well. So it would be a reversal, Your Honors. You say it's on point, but it dealt with implied preemption. It did not. Not what? It did not deal with implied preemption, Your Honor. The analysis, so Pingree started with Section 360K, interpreted it, and stated, given the language of 360K, we now must compare the federal regulation to the challenged state regulation. That is express preemption analysis. So the difference between express preemption and implied preemption analysis at its core is that in express preemption, you have congressional intent that there needs to be preemption, and then you assess the scope of preemption. But implied preemption analysis, there is no congressional intent, and so you discern congressional intent through field or conflict analysis. Pingree, from the jump, acknowledged 360K, that there's an intent to preempt, and then it assessed the scope of preemption. So that was proper express preemption analysis. So that, your proposition is that Pingree is really four square on point. Yes, Your Honor. And it was an express preemption case. Yes, Your Honor. It was interpreting the exact same statute, Section 360K of the MDA. It was interpreting the exact same FDA regulation, Section 801.421, and it was analyzing the same Florida regulations addressing minimal procedures for the purpose of fitting. And Judge Anderson had a point, a question about the differences between medical evaluations and the fitting process and noted that they seem very different. So Pingree is dispositive on that point because it distinguished medical evaluations from fitting, but also the FDA regulations corroborate that. And so in Section 801.420C3 of the regs, it sets forth a labeling requirement for hearing aids. And that label goes through the process for dispensing a hearing aid. The first step in the process is a medical evaluation to identify the cause of someone's hearing issues, and that's performed by a physician. And the point of that is to make sure that somebody just doesn't get a hearing aid if they have hearing issues. They actually identify if there's an underlying issue that they have that can be addressed through other treatment. Later in the process, after the physician has said, you're a good candidate for a hearing aid, they go to a hearing aid dispenser. And the hearing aid dispenser needs to fit that hearing aid, make sure it's programmed properly and consistent with the individual's hearing loss and needs. And that requires some testing. But there are two distinct parts of the process, no different than labeling and manufacturing, are the initial candidate evaluation and then the fitting and dispensing piece of this. And so, Your Honors, even if the court gets to the merits, Pingree disposes of most of Mr. Taylor's claims because I take his argument to this court in the briefing and today in oral argument that most of his arguments are that the licensing requirement and the mail order ban bootstrap the fitting requirement. But there's nothing wrong with the fitting requirement. Those challenges fail on the merits. And so the court has a couple of ways to dispose of this matter. No standing to directly challenge the fitting requirement and then say that the pre-sale fitting requirement nonetheless is not preempted, so the licensing and mail order ban challenge fail. And also, if he raises an independent challenge to the mail order ban, that fails because there's no federal counterpart. But if the court does get to the merits, as one final point, Your Honors, we'd ask that the court, the proper disposition in that circumstance would be to send it back down with instruction to dismiss with prejudice since the district court didn't address one of the issues due to standing, which means a dismissal without prejudice. What is the impact of the 2017 Act? There is no impact at this point, Your Honor, because it has no binding effect. And so there's no role for that or impact on this matter, Your Honor. Well, on remand, there certainly might be, however, is that correct? It depends on the timing. I'd have to study that more, Your Honor. I don't want to give you a wrong answer. Thank you. Thank you, Your Honors. Ms. Bowden. Your Honor, of course, Pingree relies on implied preemption. And that's clear from the text, where it's going through whether Congress has chosen to occupy a field. This is implied preemption language. And that explains exactly why Pingree was wrong. The FDA itself, New Jersey, had a similar, an identical requirement to Pingree. It asked for an exemption from a waiver from preemption. FDA said that the room requirement, analogous, identical to the one in Pingree, was in fact preempted, and it denied a waiver. So FDA thinks Pingree is wrong. FDA thinks those things are preempted. FDA thinks express preemption applies. The Supreme Court thinks express preemption applies. And that's why Pingree came out incorrectly. There are no other questions? Even if it is incorrect, are we bound by it? I don't think you're bound by it, because Supreme Court precedent undercuts the leg that Pingree stands on. The problem there, I think, is that there may be reasoning that undermines the reasoning, some of it in Pingree, but I don't think it guts the total holding, does it? Your Honor, I think it does. And I would have to gut the whole thing, or we'd be bound by it. Even if we agreed with you, we'd have to either go and bonk, or the Supreme Court would have to knock it over, and we would be obliged to follow it. So you've got to establish that it's abrogated to the point of, you know, the hollow shell has been eaten away. There's just nothing there. Can you say that about Pingree? Your Honor, we can, because under express preemption, Pingree comes out differently. Let's take Regal and Lohr, for example, when they decide whether there is a specific federal counterpart in the medical device amendments, and they don't require an actual analogous thing. When they make the distinction between specific and general, they only take that to the level of whether there is an FDA requirement that applies to all medical devices, or whether there's been something promulgated with regards to a specific device. And so under that standard, you don't need an analogous FDA provision as was required in Pingree. Pingree said, well, there's nothing analogous, so states can fill in the rest of the statute. And that's just clearly wrong under Supreme Court precedent. I think subsequent cases do gut it entirely, not only in the standard, but also in the reasoning and the outcome. Any other questions? The only other point I'll make is that New Jersey had, New Jersey itself, after the New Jersey Supreme Court said that the analogous exam requirement was preempted, New Jersey applied for a waiver from FDA. And again, FDA said, in fact, the same exact identical thing that we challenge here in Florida's law is preempted. So FDA agrees, audiometric exams, in addition to audiological exams, are preempted by the medical device amendments. Thank you. Thank you.